John P. Kristensen (SBN 224132)
(*Pro Hac Vice Pending*)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Blvd.
Beverly Hills, California 90211
Telephone: (310) 273-1230
*kristensen@cz.law*

Todd M. Friedman (SBN 216752)
(*Pro Hac Vice Pending*)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
21550 Oxnard Street, Suite 780
Woodland Hills, California 91367
Telephone: (877) 619-8966
*tfriedman@toddflaw.com*

Lawrence W. Freiman
Nevada Bar No. 10588
**FREIMAN LEGAL**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
Telephone: (310) 300-917-1004
*lawrence@freimanlegal.com*

Christopher W. Wood (SBN 193955)
(*Pro Hac Vice Pending*)
**DREYER BABICH BUCCOLA WOOD CAMPORA, LLP**
20 Bicentennial Circle
Sacramento, California 95826
Telephone: (916) 379-3500
*cwood@dbbwc.com*
***Attorneys for Plaintiff and all others similarly situated***

Leah Martin
Nevada Bar No. 7982
**LEAH MARTIN LAW**
601 S. Rancho Dr., Ste. C-26
Las Vegas, Nevada 89106
Telephone: (702) 420-2733
*lmartin@leahmartinglv.com*
**Designated Counsel for Service in Nevada Only**

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA – LAS VEGAS DIVISION

| | |
|---|---|
| CY MITCHELL, individually on behalf of himself and all others similarly situated,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>POLARIS INDUSTRIES, INC., a Delaware corporation; POLARIS SALES, INC., a Minnesota | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) Violation of the Nevada Deceptive Trade Practices Act;**<br><br>**DEMAND FOR JURY TRIAL** |

1  corporation; POLARIS INDUSTRIES, )
2  INC., a Minnesota corporation; and )
   DOES 1 through 10, inclusive, )
3  )
         Defendants. )
4  )
5  )
6  )
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**PLAINTIFFS' COMPLAINT** .......................................................................... 1

**I. NATURE OF THE ACTION** ................................................................... 1

**II. UTVS SOLD BY POLARIS** .................................................................. 5

**III. JURISDICTION AND VENUE** ............................................................ 6

**IV. PARTIES** ................................................................................................ 7

**V. FACTUAL ALLEGATIONS** ................................................................... 9

    **A.** *The Government Considers Regulations for UTVs* .............................. 9

    **B.** *The 1970s OSHA Regulation for ROPS on Farm Tractors* ............... 10

    **C.** *ROHVA, a Polaris-Controlled Entity, Adopts the*
    *29 C.F.R. § 1928.53 Test* .................................................................... 10

    **D.** *Polaris Cheats and None of the Class Vehicles Passes the 29*
    *C.F.R. § 1928.53 Test* ......................................................................... 11

    **E.** *Polaris Cheats by Improperly Distributing the Load and None of*
    *the Class Vehicles Pass the 29 C.F.R. 1928.53 Side Load Test* .......... 12

    **F.** *Plaintiff's Transactions* ..................................................................... 13

**VI. CLASS ALLEGATIONS** ....................................................................... 15

**VII. CAUSES OF ACTION** ......................................................................... 19

    **FIRST CAUSE OF ACTION**
    **Violation of the Nevada Deceptive Trade Practices Act**
    **By Plaintiff Cy Mitchell and the Nevada Class**
    **Against All Defendants** ...................................................................... 19

**PRAYER FOR RELIEF** ............................................................................... 23

**DEMAND FOR JURY TRIAL**……………………………………………24

1     Plaintiff CY MITCHELL ("Plaintiff" or "Mitchell"), individually and on

2     behalf of all others similarly situated, allege the following upon information and

3     belief, based upon investigation of counsel, published reports, and personal

4     knowledge:

5     **I.     NATURE OF THE ACTION**

6         1.     Plaintiff brings this action against defendants POLARIS

7     INDUSTRIES, INC. (the Delaware corporation), POLARIS SALES, INC.,

8     POLARIS INDUSTRIES, INC. (the Minnesota corporation and parent

9     corporation of the other two Polaris defendants) (collectively, "Defendants" or

10    "Polaris") on behalf of all persons who purchased in Nevada since May 25, 2017

11        2.     , Polaris Utility Terrain Vehicles ("UTVs") (they are also called side-

12    by-sides) that Polaris claimed/advertised/marked/certified that the vehicles'

13    rollover protection system ("ROPS") complied with the department of

14    Occupational Safety and Health Administration ("OSHA")

15    requirements/standards of 29 C.F.R. § 1928.53 (which is for agricultural tractors).

16        3.     "Class Vehicles" is defined to include, but are not limited to the

17    following models: Polaris RZR XP 4 Turbo S; Polaris RZR XP 4 Turbo EPS,

18    Polaris RZR PRO XP Ultimate, Polaris RZR XP Turbo S; Polaris RZR XP Turbo

19    EPS; Polaris RZR XP 4 1000 High Lifter; Polaris RZR XP 4 Turbo S Velocity;

20    Polaris RZR PRO XP Premium; Polaris RZR XP 4 1000 Premium; Polaris RZR

21    XP 4 Turbo; Polaris RZR XP 4 Turbo Dynamix Edition; Polaris RZR XP 4 Turbo

22    Fox Edition; Polaris RZR XP 1000 Trails & Rocks; Polaris RZR PRO XP; Polaris

23    XP Turbo S Velocity; Polaris RZR XP 4 1000 Limited Edition; Polaris RZR XP 4

24    1000 EPS; Polaris RZR XP 4 1000 Ride Command; Polaris RZR XP 1000 EPS

25    High Lifter; Polaris RZR XP 1000 High Lifter; Polaris RZR XP 1000 EPS;

26    Polaris RZR XP 1000 EPS LE; Polaris RZR XP 1000 Ride Command; Polaris

27    RZR XP 4 1000; Polaris RZR XP Turbo; Polaris RZR XP Turbo Fox Edition;

28    Polaris RZR XP Turbo Dynamix Edition; Polaris RZR XP Turbo S; Polaris RZR

XP 1000 Premium; Polaris RZR 4 1000; Polaris RZR XP 1000 Limited Edition; Polaris RZR XP 1000; Polaris RZR S 1000; Polaris RZR S 1000 EPS; Polaris RZR S 900 Premium; Polaris RZR 900 Fox Edition; Polaris RZR S 900; Polaris RZR S 900 EPS; Polaris RZR S4 900 EPS; Polaris RZR 900 Premium; Polaris RZR RS1; Polaris RZR 900; Polaris RZR 4 900 EPS LE; Polaris RZR 4 900 EPS; Polaris RZR 900 EPS Trail; Polaris RZR 900 EPS; Polaris RZR 900 EPS XC Edition; Polaris RZR 900 Polaris; Polaris RZR 4 800 EPS LE; Polaris RZR 4 800 EPS; Polaris RZR S 800 EPS; Polaris RZR S 800 LE; Polaris RZR S 800; Polaris RZR 800 EPS LE; Polaris RZR 800 EPS XC Edition; Polaris RZR 800 Polaris Pursuit; Polaris RZR 800; Polaris RZR 570 Premium; Polaris RZR 570 EPS Trail LE; Polaris RZR 570 EPS Trail; Polaris RZR 570 EPS LE; Polaris RZR 570 EPS; Polaris RZR 570; Polaris RZR S 570 570 EPS; Polaris RZR 170 EFI; Polaris RZR Turbo EPS; Polaris Ranger Crew XP 1000 EPS NorthStar Edition; Polaris Ranger XP 1000 NorthStar Edition; Polaris Ranger Crew XP 1000 EPS NorthStar HVAC Edition; Polaris Ranger XP 1000 EPS NorthStar HVAC Edition ; Polaris Ranger XP 1000 EPS NorthStar Edition; Polaris Ranger Crew XP 1000 High Lifter Edition; Polaris Ranger XP 1000 High Lifter Edition; Polaris Ranger Crew XP 1000 EPS High Lifter Edition; Polaris Ranger XP 1000 EPS High Lifter Edition; Polaris Ranger Crew XP 1000 EPS Back Country Edition; Polaris Ranger XP 1000 EPS Back Country Limited Edition; Polaris Ranger Crew XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger XP 1000 EPS 20th Anniversary Limited Edition; Polaris Ranger Crew XP 1000 Texas Edition; Polaris Ranger XP 1000 Texas Edition; Polaris Ranger Crew XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS Premium; Polaris Ranger XP 1000 Premium; Polaris Ranger Crew XP 1000 EPS; Polaris Ranger XP 1000 EPS; Polaris Ranger XP 1000 EPS Ranch Edition; Polaris Ranger XP 1000 EPS Hunter Edition; Polaris Ranger XP 1000; Polaris Ranger Crew XP 900 EPS; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS Premium; Polaris Ranger Crew XP 900; Polaris Ranger XP

900; Polaris Ranger Crew XP 900-6 EPS; Polaris Ranger Crew XP 900-6; Polaris Ranger Crew XP 900-5 EPS; Polaris Ranger Crew XO 900-5; Polaris Ranger XP 900; Polaris Ranger XP 900 EPS; Polaris Ranger XP 900 EPS High Lifter Edition; Polaris Ranger XP 900 EPS Hunter Deluxe Edition; Polaris Ranger XP 900 EPS Hunter Edition; Polaris Ranger XP 900 EPS NorthStar Edition; Polaris Ranger XP 900 EPS Trail Edition; Polaris Ranger XP 900 EPS LE; Polaris Ranger XP 900 EPS Browning LE; Polaris Ranger XP 900 Deluxe; Polaris Ranger XP 570 EPS; Polaris Ranger XP 570; Polaris Ranger Crew 1000 Premium; Polaris Ranger 1000 Premium; Polaris Ranger Crew 1000; Polaris Ranger 1000 EPS; Polaris Ranger 1000; Polaris Ranger Crew 900 EPS; Polaris Ranger Crew 900 EPS LE; Polaris Ranger Crew 900; Polaris Ranger Crew 900-6 EPS; Polaris Ranger Crew 900-6; Polaris Ranger 800 EFI; Polaris Ranger 800 Midsize; Polaris Ranger 800 EPS LE; Polaris Ranger Crew 800 EPS; Polaris Ranger Crew 800; Polaris Ranger 800 EPS; Polaris Ranger Crew 570-6; Polaris Ranger Crew 570-4 Premium; Polaris Ranger Crew 570-4 EPS; Polaris Ranger Crew 570-4; Polaris Ranger Crew 570 EPS; Polaris Ranger Crew 570 EPS LE; Polaris Ranger Crew EPS 570 Full-Size; Polaris Ranger 570 EPS; Polaris Ranger 570 EPS Hunter Edition; Polaris Ranger Crew 570 EFI; Polaris Ranger 570 EFI; Polaris Ranger Crew 570 Full-Size; Polaris Ranger 570 Full-Size; Polaris Ranger Crew 570; Polaris Ranger 570; Polaris Ranger 500; Polaris Ranger 400; Polaris Ranger 150 EFI; Polaris Ranger 6X6; Polaris Ranger Diesel HST Deluxe; Polaris Ranger Diesel HST; Polaris Ranger Crew Diesel; Polaris Ranger Diesel; Polaris Ranger EV; Polaris Ranger EV LI-ION; Polaris Ranger ETX; Polaris General 4 1000 EPS Deluxe; Polaris General 4 1000; Polaris General 4 1000 EPS; Polaris General 4 1000 Ride Command Edition; Polaris General 1000 Deluxe; Polaris General 1000 Premium; Polaris General 1000; Polaris General 1000 Ride Command Edition; Polaris General 1000 Hunter Edition; Polaris General 1000 Limited Edition; Polaris General 1000 EPS; Polaris General 1000 EPS Deluxe;

1  Polaris General 1000 EPS Hunter Edition; and Polaris General 1000 EPS Ride
2  Command Edition.

3      4.      Polaris includes stickers like the following to suggest that their
4  vehicles meet these OSHA requirements:

5  
6  This ROPS structure meets OSHA requirements of 29 CFR § 1928.53

POLARIS® INDUSTRIES INC. 2100 Highway 55 Medina MN 55340

7      5.      The stickers are placed on Class Vehicles and are visible at the point
8  of sale where consumers are also informed that Class Vehicles meet all applicable
9  standards and regulations, including self-adopted regulations, and meet OSHA
10  requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

11      6.      None of the Class Vehicles sold by Polaris meet the OSHA
12  requirements of 29 C.F.R. § 1928.53. Polaris tells all of their customers that their
13  ROPS are safe because they meet this standard. They do not. Polaris has also
14  staved off federal regulations by the U.S. Consumer Product Safety Commission
15  ("CPSC") in part by causing the adoption of newly created industry standards as
16  part of the self-regulation revolution. Even after adopting farm tractor standards
17  issued for worker safety on farms in the early 1970s, Polaris cheats and does not
18  even meet those standards.

19      7.      Roof strength is a vital safety concern to consumers given the strong
20  likelihood of UTVs rolling over. The failure to meet all applicable federal and
21  state statutes, standards, regulations, and self-adopted regulations, including
22  OSHA 29 C.F.R. § 1928.53 requirements is material information for consumers
23  purchasing/leasing UTVs, such as the Class Vehicles.

24      8.      While many violations are described below with specificity, this
25  Complaint alleges violations of the statutes cited in their entirety.

26      9.      Unless otherwise stated, Plaintiff alleges that any violations by
27  Polaris were knowing and intentional, and that Polaris did not maintain procedures
28  reasonably adapted to avoid any such violation.

10.     Unless otherwise indicated, the use of any defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that defendant's name.

## II.     UTVS SOLD BY POLARIS

11.     A UTV is a motorized vehicle with four or more low pressure tires designed for off-road use and intended by the manufacturer primarily for recreational use by one or more persons. UTVs are a relatively new product in the motorized off-road category, and their speed and design make them unique from all-terrain vehicles ("ATVs"). The main distinction is that an ATV is defined by federal law, in part as: any motorized, off-highway vehicle designed to travel on 3 or 4 wheels, having a seat designed to be straddled by the operator and handlebars for steering control. 15 U.S.C. § 2089(e)(1)(A).

12.     A UTV, unlike an ATV, has traditional seating like an automobile with bench or bucket seats, a restraint system, and is equipped with a steering wheel. UTVs are similar in design to golf carts with throttle and brake pedals. While golf carts travel approximately 15 miles per hour or less, UTVs such as the Polaris Rangers and Razors have top speeds well in excess of 60 miles per hour. Polaris UTVs are powered by strong engines with up to 181 horsepower.

13.     The images depicted below are from Polaris' most recent earnings report and website. They show the Rangers and Razors, which do not look like slow 1970s farm tractors:

 



14.     UTVs were introduced into the United States market in the late 1990s. In 1998, only 2,000 UTVs were sold, all by one manufacturer. Polaris entered the market in 2000. By 2003, 20,000 UTVs were sold in the United States. That number then grew dramatically. There was a 19% growth from calendar year 2006 over 2005 levels with approximately 255,000 UTVs sold worldwide. In its most recent second quarter of 2019 earnings report, Polaris estimated nearly 1 billion in gross sales in the quarter. Polaris possesses the top spot in the North American market share ranks and has a three -fold lead on its nearest competitor.

15.     Polaris UTVs are sold at retail with an approximate median base price of around $12,999.99 and sell at prices exceeding $20,000.00. The price is similar to entry and midsize automobiles.

## III.    JURISDICTION AND VENUE

16.     Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because plaintiff Cy Mitchell purchased in 2019 a new 2019 RZR XP Turbo in Nevada. Plaintiff seeks relief on behalf of a Nevada Class. Defendants' principal place of business

1    is located in Minnesota. In addition, the matter in controversy exceeds $5,000,000

2    exclusive of interest and costs. Therefore, both diversity jurisdiction and the

3    damages threshold under the Class Action Fairness Act of 2005 ("CAFA") are

4    present, and this Court has jurisdiction.

5          17.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following

6    reasons: (i) the conduct complained of herein occurred within this judicial district;

7    and (ii)) Defendants conducted business within this judicial district at all times

8    relevant.

9          18.    Because Defendants conducted business within the State of Nevada

10    at all time relevant, personal jurisdiction is established.

**IV.**    <u>**PARTIES**</u>

12          19.    Plaintiff Cy Mitchell ("Mitchell") is an individual who resides in the

13    State of Nevada. Plaintiff is a member of the putative Nevada Class defined

14    herein.

15          20.    Plaintiff is informed and believes, and upon such information and

16    belief allege thereon, that defendant Polaris Industries, Inc. is a Delaware

17    Corporation with its principal place of business at 2100 Highway 55, Medina,

18    Minnesota 55340-9770. Its agent for service of process is The Corporation Trust

19    Company, 1209 Orange Street, Wilmington, Delaware 19801.

20          21.    Plaintiff is informed and believes, and upon such information and

21    belief alleges thereon, that defendant Polaris Sales, Inc. is a Minnesota

22    Corporation with its principal place of business at 2100 Highway 55, Medina,

23    Minnesota 55340-9770. Its agent for service of process in California is CT

24    Corporation System located at 818 West 7th Street, Suite 930, Los Angeles,

25    California 90017.

26          22.    Plaintiff is informed and believes, and upon such information and

27    belief alleges thereon, that defendant Polaris Industries, Inc. is a Minnesota

28    Corporation with its principal place of business at 2100 Highway 55, Medina,

1  Minnesota 55340-9770. It is the parent company of both defendant Polaris

2  Industries, Inc. the Delaware Corporation and Polaris Sales, Inc. Its agent for

3  service of process is CT Corporation System Inc., 101 Date Street N., St. Paul,

4  Minnesota 55117-5603.

5       23.    Polaris maintains their largest and distribution center facility in

6  California. Polaris at all relevant times herein sold vehicles to members of the

7  general public as well as designing, testing, manufacturing, inspecting,

8  distributing, recalling them, and warning and instructing users on the safe use of

9  the motor vehicles, including the subject vehicles, in exchange for valuable

10  consideration in Tehama County.

11       24.    The above-named Defendants, and their subsidiaries and agents, are

12  collectively referred to as "Defendants." The true names and capacities of the

13  Defendants sued herein as Doe Defendants 1 through 10, inclusive, are currently

14  unknown to Plaintiffs, who therefore sue such Defendants by fictitious names.

15  Each of the Defendants designated herein as a Doe is legally responsible for the

16  unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the

17  Complaint to reflect the true names and capacities of the Doe Defendants when

18  such identities become known.

19       25.    Plaintiff is informed and believes, and thereon allege, that at all

20  relevant times, each and every Defendant was acting as an agent and/or employee

21  of each of the other Defendants, and was the owner, agent, servant, joint venturer

22  and employee, each of the other and each was acting within the course and scope

23  of its ownership, agency, service, joint venture and employment with the full

24  knowledge and consent of each of the other Defendants. Plaintiff is informed and

25  believes, and based thereon alleges, that each of the acts and/or omissions

26  complained of herein was made known to, and ratified by, each of the other

27  Defendants.

28       26.    At all times mentioned herein, each and every Defendant was the

1  successor of the other and each assumes the responsibility for each other's acts

2  and omissions.

3  **V.     FACTUAL ALLEGATIONS**

4       **A.     *The Government Considers Regulations for UTVs***

5       27.     Polaris UTVs are subject to product safety standards administered by

6  the CPSC, not the National Highway Traffic Safety Administration ("NHTSA").

7  UTVs are "consumer products" that can be regulated by the CPSC via the

8  Consumer Product Safety Act. 15 U.S.C. § 2052(a).

9       28.     On December 12, 2008, the CPSC met with representatives of the

10  Recreational Off-Highway Vehicle Association ("ROVHA") to discuss the

11  development of a standard to be certified by the American National Standards

12  Institute ("ANSI"). The standards discussed, at this time, involved stability

13  standards. In June 2009, ROHVA sent over proposed voluntary standards,

14  including one for the ROPS. Ken D'Entremont and Mary McConnell attended the

15  meeting for Polaris. Paul Vitrano attended for ROHVA.

16      29.     In 2009, the CPSC began the process of considering regulatory action

17  of UTVs. (In CPSC nomenclature they are ROVs.) It issued a Notice of Proposed

18  Rulemaking. The CPSC noted that farm vehicles have maximum speeds of 25

19  mph or less, while UTVs at the time could exceed 30 mph. The CPSC identified

20  its databases of Injury and Potential Injury Incidents (IPII) and In-Depth

21  Investigation (INDP) for incidents between January 2003 and August 2009

22  involving 181 incidents, including 116 fatalities and 152 other injuries. The

23  injuries included deglovings, fractures and crushing injuries to victims' legs, feet,

24  arms and hands, resulting in amputations at times. 69% of the injuries occurred in

25  rollover incidents.

26      30.     By April 2013, the CPSC was aware of 428 incidents resulting in 231

27  fatalities and 388 other injuries. 150 of the 231 deaths were in rollover accidents.

28  ///

**B.** *The 1970s OSHA Regulation for ROPS on Farm Tractors*

31.     In 1972, the U.S. Department of Labor concerned that "[t]ractor roll-overs have been a major cause of employee injury and death on the farm" appointed the Standards Advisory Committee on Agriculture to make a ROPS standard a priority.

32.     After the notice of proposed rulemaking notice period, the Department of Labor, via OSHA promulgated 29 C.F.R. §§ 1928.51 (definitions), 1928.52 and 1928.53 (ROPS strength test).

33.     The test for the ROPS strength involves forces applied to the ROPS and it measures the deflection caused by the force. If there is too much deflection the ROPS fails the tests. How much force is applied, according to the regulation depends on the tractor weight.

34.     Tractor weight is defined pursuant to 29 C.F.R. §§ 1928.51(a)(4) as:

> "Tractor weight" includes the protective frame or enclosure, all fuels, and other components required for normal use of the tractor. Ballast shall be added as necessary to achieve **a minimum total weight** of 110 lb. (50.0 kg.) per maximum power take-off horse power at the rated engine speed or the maximum, gross vehicle weight specified by the manufacturer, **whichever is the greatest**. From end weight shall be at least 25 percent of the tractor test weight. **In case power take-off horsepower is not available, 95 percent of net engine flywheel horsepower shall be used**.

35.     Thus, the weight to be tested is either the gross vehicle weight (about 2,000 to 2,400 pounds, or the 110 pounds multiplied by the maximum power take off horse power. The statute specifically indicates if the tractor is not one where you can measure the "power take off" horsepower, or PTO, then 95 percent of net engine flywheel horsepower is used.

**C.** *ROHVA, a Polaris-Controlled Entity, Adopts the 29 C.F.R. § 1928.53 Test*

36.     In order to avoid CPSC promulgating actual regulations, Polaris and

1  the industry set up new standards with which they would comport. One of these

2  was for the strength of the ROPS. This was done via ROHVA, which is

3  controlled, in part by Polaris. ROHVA adopted the tractor ROPS test of 29 C.F.R.

4  §§ 1928.51, *et seq.*, This was then made into an ANSI standard.

**D.**  ***Polaris Cheats and None of the Class Vehicles Passes the 29 C.F.R.***
6  **§ *1928.53 Test***

7  37.  The Class Vehicles consisting of 2015 to 2019 Polaris UTVs are

8  believed to have horsepower ranging from approximately 168 horsepower to 68

9  horsepower for the smaller 2-door Rangers.

10  38.  For every model of Class Vehicles, Polaris tested the vehicles by the

11  gross vehicle weight. Polaris intentionally refused to test at 110 pounds times

12  either the maximum power take off horsepower or 95% of the net engine flywheel

13  horsepower. For example, the 2019 RZR XP 4 Turbo is tested at 2750 pounds (the

14  gross vehicle weight is 2713 pounds). It has 168 horsepower. 95% of 168

15  horsepower is 159.6. Rounding down, would be 159. So, 110 pounds multiplied

16  by 159 is 17,490. The correct "W" or tractor weight in the test, should be 17,490

17  pounds. Polaris intentionally refused to use the correct tractor weight of

18  approximately 17,490 pounds. Instead, it used 2,750 pounds. Polaris did not

19  comply with the test. Polaris misled all Class members.

20  39.  The Polaris vehicles are lighter and have much stronger engines than

21  farm tractors. Hence, their gross vehicle weights are comparatively lower, and 110

22  pounds times their PTO horsepower (or 95% of the net fly wheel horsepower) is

23  going to be larger than that of the farm tractors.

24  40.  In fact, the gross vehicle weight, due the specifications of the Class

25  Vehicles should never be used for the OSHA tests. 110 pounds times the PTO

26  horsepower (or 95% of the net fly wheel horsepower) of each Class Vehicle is

27  substantially greater than the gross vehicle weights.

28  41.  Not a single Class Vehicle has been tested using the proper Tractor

Weight pursuant to 29 C.F.R. §§ 1928.51, *et seq.*, Polaris advertised and told the public that each and every Class Vehicle passed the OSHA 29 C.F.R. § 1928.53 test. None did.

42.     In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

43.     Polaris is believed to have digital computer models of the ROPS system that can be inputted into commercially available computer aided engineering programs. They test the ROPS system via an outside entity and using the computer aided engineering systems. It would be easy to ascertain whether the ROPS system meet the tests by inputting the correct Tractor Weight instead of the lower gross vehicle weight.

**E.     *Polaris Cheats by Improperly Distributing the Load and None of the Class Vehicles Pass the 29 C.F.R. 1928.53 Side Load Test***

44.     The Class Vehicles' ROPS, being an integral part of each vehicle's enclosure, are required to conform with the "side load" test as described in 29 C.F.R. § 1928.53(d)(2)(iii)(F). In essence, the integrity of the structure is tested by applying force to one side of the vehicle. Specifically, the test requires that:

> When the protective-frame structures are an integral part of the enclosure, apply the side load according to Figure C-13, and record ***L*** and ***D*** simultaneously. Static side-load application shall be distributed uniformly on the frame over an area perpendicular to the direction of load application [...] **This side load shall be applied to the longitudinal side farthest from the point of rear-load application**.

29 C.F.R. § 1928.53(d)(2)(iii)(F).



FIGURE C-13 - SIDE LOAD APPLICATION.

45. Polaris cheats when it performs the side load test. Instead of following OSHA guidelines and applying force to a single side, Polaris uses a tool commonly known as a "load distributor" during the test to distribute the load parallel across the top of the enclosure to the other side of the vehicle. The "load distributor" does as the name suggests and spreads out the applied force. By doing so, force is applied to *__both__* sides of the enclosure and not the one side as required by the OSHA standard.

46. Polaris purposefully uses the load distributor for every side load test to ensure that every Class Vehicle "passes" the test.

47. In failing to provide consumers accurate and truthful information about the true nature and characteristics of the Class Vehicles pertaining to compliance with all applicable federal and state statutes, standards, and regulations, including self-adopted regulations, specifically OSHA requirements of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the bargain, that they have to retrofit the Class Vehicles for adequate safety, and are faced with a strong likelihood of serious injury or death.

**F.    *Plaintiff's Transaction***

48. In 2019, Mitchell purchased a new 2019 RZR XP Turbo in Nevada.

1    49.    Mitchell saw and read the label/sticker on the 2019 RZR XP Turbo

2    similar to the picture listed below:



50.    Mitchell understood that OSHA requirements were federal regulations pertaining to safety. Mitchell read the sticker on the 2019 RZR XP Turbo and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends.

51.    Mitchell, in seeing and reading the sticker, relied on the language contained therein to purchase the 2019 RZR XP Turbo. If the sticker said that the ROPS structure failed to meet OSHA requirements, he would not have purchased the 2019 RZR XP Turbo.

52.    Mitchell had a roll over and the ROPS collapsed due to it being weak and unsafe for consumers.

53.    The stickers placed on Plaintiff's Polaris vehicles as well as Class Vehicles and are visible at the point of sale where consumers are also informed that Class Vehicles meet all applicable standards and regulations, including self-adopted regulations, and meet OSHA requirements of 29 C.F.R. § 1928.53, when in fact, they do not.

54.    None of the Class Vehicles sold by Polaris meet the OSHA requirements of 29 C.F.R. § 1928.53. Polaris tell all of their customers that their ROPS systems are safe because they meet this standard. They do not. **They do not test the with the proper engine power in determining the vehicle weight**.

55.    But for Defendants' misrepresentations, misleading and fraudulent

1  statements, Plaintiffs would not have purchased the vehicles or would have paid
2  substantially less for the vehicles than the purchase price of upwards of
3  $20,000.00 each. Plaintiff did not receive the benefit of the bargain.

4      56.    In failing to provide consumers accurate and truthful information
5  about the true nature and characteristics of the Class Vehicles pertaining to
6  compliance with all applicable federal and state statutes, standards, and
7  regulations, including self-adopted regulations, specifically OSHA requirements
8  of 29 C.F.R. § 1928.53, consumers are damaged based on the benefit of the
9  bargain, that they have to retrofit the Class Vehicles for adequate safety, and are
10 faced with a strong likelihood of serious injury or death.

## VI.  CLASS ALLEGATIONS

12     57.    Plaintiff bring this action pursuant to Rule 23 of the Federal Rules of
13 Civil Procedure and/or other applicable law, on behalf of themselves and all
14 others similarly situated, as members of the proposed Class, per their state defined
15 as follows.

16     58.    <u>Nevada Class (Mitchell):</u> All persons in Nevada that purchased a
17 Class Vehicle in the four years preceding the original filing in the Eastern District
18 of California, or since May 25, 2017.

19     59.    Plaintiff does not know the exact number of persons in the Class, but
20 believe them to be in the several hundreds, if not thousands, making joinder of all
21 these actions impracticable.

22     60.    The identity of the individual members is ascertainable through
23 Defendants' and/or Defendants' agents' records or by public notice.

24     61.    There is a well-defined community of interest in the questions of law
25 and fact involved affecting the members of the Class.

26     62.    Plaintiff will fairly and adequately protect the interest of the Class.

27     63.    Plaintiff retained counsel experienced in consumer class action
28 litigation.

1    64.    Plaintiff's claims are typical of the claims of the Class, which all

2    arise from the same operative facts involving Defendants' practices.

3    65.    A class action is a superior method for the fair and efficient

4    adjudication of this controversy.

5    66.    Class-wide damages are essential to induce Defendants to comply

6    with the federal and state laws alleged in the Complaint.

7    67.    Class members are unlikely to prosecute such claims on an individual

8    basis since the individual damages are small. Management of these claims is

9    likely to present significantly fewer difficulties than those presented in many class

10   claims, e.g., securities fraud.

11   68.    Plaintiff and the Class seek injunctive relief against Defendants to

12   preclude Defendants from advertising that the Class Vehicles comply with OSHA

13   29 C.F.R. § 1928.53 until they meet the tests using the correct Tractor Weight as

14   defined in 29 C.F.R. § 1928.51(a)(4).

15   69.    Plaintiff and the Class seek to enjoin Defendants' illegal business

16   practices of advertising and informing consumers that the Class Vehicles meet all

17   applicable federal and state statutes, standards, regulations, including OSHA

18   requirements of 29 C.F.R § 1928.53, when they in fact, do not.

19   70.    As such, Plaintiff and the Class seek public injunctive relief to

20   prevent Defendants from continuing with their unlawful business acts and

21   practices as alleged herein to ensure that Defendants do not continue to harm the

22   general public by continuing to engage in the unlawful business acts and practices

23   as alleged herein.

24   71.    Plaintiff, individually, and on behalf of all Nevada consumers, seek

25   individual, representative, and public injunctive relief and any necessary order or

26   judgments that will prevent Defendants from continuing with their unlawful

27   business acts and practices as alleged herein.

28   72.    Defendants acted on grounds generally applicable to the Class

thereby making appropriate final declaratory relief with respect to the Class as a whole.

73. Members of the Class are likely to be unaware of their rights.

74. Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via publication.

75. Plaintiff request certification of a hybrid class combining the elements of Fed. R. Civ. P. 23(b)(3) for monetary damages and Fed. R. Civ. P. 23(b)(2) for equitable relief.

76. This action is properly maintainable as a class action. This action satisfies the numerosity, typicality, adequacy, predominance and superiority requirements for a class action.

77. **Numerosity**: The proposed Class is so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff does not know the number of members in the Class, but believe the Class members number in the thousands, if not more. Plaintiff alleges that the Class may be ascertained by the records maintained by Defendants.

78. Plaintiff and members of the Class were harmed by the acts of Defendants in at least the following ways: violations of the Nevada Deceptive Trade Practices Act.

79. **Commonality**: There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

    i. Whether Defendants failed to test the Class Vehicles using the correct Tractor Weight as defined by 29 C.F.R. § 1928.51(a)(4);

    ii. Whether Defendants violated Cal. Civ. Code §§ 1770, *et seq.*;

    iii. Whether Defendants violated the Nevada Deceptive Trade Practices

1        Act;

2        iv.    Whether Plaintiff and Class Members are entitled to statutory

3               damages.

4        80.    **Typicality**:  Plaintiff's claims are typical of the claims of members of

5   the Class, as Plaintiff was subject to the same common course of conduct by

6   Defendants as all Class members. The injuries to each member of the Class were

7   caused directly by Defendants' wrongful conduct as alleged herein.

8        81.    **Adequacy of Representation**:  Plaintiff will fairly and adequately

9   represent and protect the interests of the Class. Plaintiff retained counsel with

10  substantial experience in handling complex class action litigation and litigation

11  against product manufacturers. Plaintiff and their counsel are committed to

12  prosecuting this action vigorously on behalf of the Class, and have financial

13  resources to do so.

14       82.    **Superiority of Class Action**: A class action is superior to other

15  available methods for the fair and efficient adjudication of the present

16  controversy. Class members have little interest in individually controlling the

17  prosecution of separate actions because the individual damage claims of each

18  Class member are not substantial enough to warrant individual filings. In sum, for

19  many if not most Class members, a class action is the only feasible mechanism

20  that will allow them an opportunity for legal redress and justice. The conduct of

21  this action as a class action in this forum, with respect to some or all of the issues

22  presented herein, presents fewer management difficulties, conserves the resources

23  of the parties and of the court system, and protects the rights of each Class

24  member.

25       83.    Moreover, individualized litigation would also present the potential

26  for varying, inconsistent, or incompatible standards of conduct for Defendants,

27  and would magnify the delay and expense to all parties and to the court system

28  resulting from multiple trials of the same factual issues. The adjudication of

1  individual Class members' claims would also, as a practical matter, be dispositive
2  of the interests of other members not parties to the adjudication, and could
3  substantially impair or impede the ability of other Class members to protect their
4  interests.

5        84.    Plaintiff and Class members have suffered and will continue to suffer
6  harm as a result of Defendants' unlawful and wrongful conduct. Defendants have
7  acted, or refused to act, on grounds generally applicable to the Class, thereby
8  making appropriate final and injunctive relief with regard to the Class members as
9  a whole.

10  **VII.   CAUSES OF ACTION**

11  **FIRST CAUSE OF ACTION**

12  **VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT,**

13  **NEV. *REV STAT.* §§ 598.0903, *ET SEQ.***

14  **(Against All Defendants on Behalf of Plaintiff Cy Mitchell and**

15  **the Nevada Class)**

16        85.    Plaintiff hereby incorporates by reference and re-alleges each and
17  every allegation set forth in each and every preceding paragraph of this
18  Complaint, as though fully set forth herein.

19        86.    Mitchell brings this cause of action on behalf of himself and the
20  Nevada Class against all Defendants.

21        87.    Nev. Rev. State (NRS) 41.600(1) states that an action may be brought
22  by any person who is a victim of consumer fraud.

23        88.    NRS 41.600(2) defines "consumer fraud" as a "deceptive trade
24  practice" as defined in NRS 598.0915 to NRS 598.0925.

25        89.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"). NRS
26  § 598.0915 provides that a person engages in a "deceptive trade practice" if, in the
27  course of business or occupation, the person: "5. Knowingly makes a false
28  representation as to the characteristics, ingredients, uses, benefits, alterations or

quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith"; "7. Represents that goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are of a particular style or model, if he or she knows or should know that they are of another standard, quality, grade, style or model"; "9. Advertises goods or services with intent not to sell or lease them as advertised"; or "15. Knowingly makes any other false representation in a transaction.

90. Polaris knowingly violated NRS 598.0915(13) by making false or misleading statements regarding the safety of the Class Vehicles.

91. Polaris engaged in consumer fraud when it violated NRS 598.0915 by knowingly making false representations by representing to consumers that their manufactured and sold Class Vehicles complied with the OSHA requirements of 29 C.F.R. 1928.53, when in fact they did not.

92. In 2019, Mitchell purchased a 2019 RZR XP Turbo new in Nevada.

93. Mitchell saw and read the label/sticker on the 2019 RZR XP Turbo similar to the picture listed below:



94. Mitchell understood that OSHA requirements were federal regulations pertaining to safety. Mitchell read the sticker on the 2019 RZR XP Turbo and understood the language to mean that the vehicle's ROPS structure met federal standards for safety and that the vehicle was safe for use by him, his family, and friends.

95. Mitchell, in seeing and reading the sticker, relied on the language contained therein to purchase the 2019 RZR XP Turbo. If the sticker said that the

ROPS structure failed to meet OSHA requirements, he would not have purchased the 2019 RZR XP Turbo.

96.   Mitchell had a roll over and the cage collapsed due to it being weak and unsafe for consumers.

97.   Polaris intentionally and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Mitchell and the Nevada Class.

98.   Polaris knew or should have known its conduct violated the Nevada DTPA.

99.   In the course of their business, Polaris misrepresented, concealed and suppressed material facts about the Class Vehicles and the actual strength of the ROPS meant to protect consumers.

100.   Defendants thus violated the Act by, at minimum: knowingly representing that Class Vehicles have uses and benefits which they do not have; representing that Class Vehicles are of a particular standard, quality, and grade when they are not; advertising Class Vehicles with the intent not to sell or lease them as advertised; and representing that the subject of a transaction involving Class Vehicles has been supplied in accordance with a previous representation when it has not; and knowingly making other false representations in a transaction.

101.   Polaris' actions as set forth above occurred in the conduct of trade or commerce.

102.   Mitchell and the Nevada Class members suffered ascertainable loss and actual damages as a direct and proximate result of Polaris' misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Nevada Class members who purchased the Class Vehicles would not have purchased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and would have paid significantly less for them. Plaintiff also suffered

diminished value of their vehicles, as well as diminished loss. Plaintiff and the Nevada Class members did not obtain the benefit of the bargain from Polaris.

103.    Accordingly, Mitchell and the Nevada Class seek their actual damages, punitive damages, an order enjoining Polaris' deceptive acts or practices, costs of Court, attorney's fees, and all other appropriate and available under the Nevada DTPA.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief and judgment as follows:

1. Certifying the Class as requested herein;

2. Providing such further relief as may be just and proper.

3. Appointing Plaintiff and his counsel to represent the Class;

In addition, Plaintiff, and the Class Members pray for further judgment as follows:

4. Restitution of the funds improperly obtained by Defendants;

5. All compensatory or special damages;

6. Any and all statutory enhanced damages;

7. All reasonable and necessary attorneys' fees and costs provided by statute, common law or the Court's inherent power;

8. For equitable and injunctive relief, including public injunctive relief; and

9. Any and all other relief that this Court deems just and proper.

Dated: March 15, 2022          Respectfully submitted,

By:  */s/ Lawrence W. Freiman*

John P. Kristensen (*Pro Hac Vice Pending*)
**CARPENTER & ZUCKERMAN**

Todd M. Friedman, Esq. (*Pro Hac Vice Pending*)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

Lawrence W. Freiman (NBN 10588)
**FREIMAN LEGAL**

Leah Martin (NBN 7982)
**LEAH MARTIN LAW (DESIGNATED COUNSEL FOR SERVICE IN NEVADA ONLY)**

***Attorneys for Plaintiffs and all others similarly situated***

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated:  March 15, 2022        Respectfully submitted,

By:  */s/ Lawrence W. Freiman*

John P. Kristensen (*Pro Hac Vice Pending*)
**CARPENTER & ZUCKERMAN**

Todd M. Friedman, Esq. (*Pro Hac Vice Pending*)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

Lawrence W. Freiman (NBN 10588)
**FREIMAN LEGAL**

Leah Martin (NBN 7982)
**LEAH MARTIN LAW (DESIGNATED COUNSEL FOR SERVICE IN NEVADA ONLY)**

***Attorneys for Plaintiffs and all others similarly situated***